1  Darrell Palmer (SBN 125147)
   Email:  darrell.palmer@palmerlegalteam.com
2  Law Offices of Darrell Palmer
   603 North Highway 101, Ste A
3  Solana Beach, California 92075
   Telephone: (858) 792-5600
4  Facsimile: (858) 792-5655

5
   Attorney for Objector Joseph Balla
6

7

8                    UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10
   BRICE YINGLING D/B/A ALAMO          )   Case No. 09-CV-01733-JW
11 AUTOSPORTS AND ANDY SCOTT,          )
                                       )
12              Plaintiffs,            )   OBJECTION OF JOSEPH BALLA TO
                                       )   PROPOSED SETTLEMENT AND NOTICE
13                                     )   OF INTENT TO APPEAR
   v.                                  )
14                                     )
   EBAY INC.,                          )   Date:  March 28, 2011
15                                     )   Time:  9:00 a.m.
                                       )   Judge:  Honorable James Ware
16              Defendant.             )
   _____)
17

18       COMES NOW, JOSEPH BALLA ("Objector") Class Member to this action, by and through his

19 undersigned counsel, and hereby files these Objections to the Stipulation and Settlement Agreement

20 dated December 12, 2010 (Doc. 201), gives notice of his counsel's intent to appear at the March 28,

21 2011, final approval hearing, and requests award of an incentive fee for serving as a named class

22 member.

23       Objector, JOSEPH BALLA, represents to the court that he is a Class Member, qualified to make

24 a claim as set forth in the NOTICE OF CLASS ACTION SETTLMENT; his address is in San Diego

25 County, California, and all mail should be sent to his attorney's address above.  For privacy reasons, the

26 objector's eBay account number will not be made public in this pleading, but can be obtained through

27 his attorney's office.

28

1   This objector would like to bring to the Court's attention a discrepancy with the deadline to

2   object to the settlement.  The "Home" page, section G, of the settlement website indicates that the

3   deadline to object is February 21, 2011, and not February 14, 2011.

4       This Objector objects to the Settlement Agreement for the reasons set forth below.

5   **I. <u>COURT MUST CRITICALLY ANALYZE THE FEE APPORTIONMENT</u>**
    **<u>AS FIDUCIARY OF THE CLASS.</u>**

6

7       The court has a "duty under Rule 23 of the Federal Rules of Civil Procedure to protect absent

8   class members and to police class action proceedings."  *Strong v. BellSouth Telecommunications*, Inc.,

9   137 F.3d 844, 849 (5th Cir. 1998).  The duty requires a review of the substantive claims included in the

10  agreement and an investigation into the manner in which fees of class counsel are to be paid and the

11  dollar amount for such services.  *Id.*  "Active judicial involvement in measuring fee awards is singularly

12  important to the proper operation of the class-action process. Continued reliance on case law

13  development of fee-award measures does not diminish the court's responsibility. In a class action, the

14  district court must ensure that the amount and mode of payment of attorney fees are fair and proper

15  whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the

16  court bears this responsibility."  Committee Notes to Rule 23(h), 2003.

17      Once a settlement is reached, both Class and Defense counsel's interests change.  No longer

18  vigorously advocating for their clients' interests, Class Counsel's interests are inherently conflicted with

19  the Class as they become another claimant to the very fund that they have created for their clients.

20  Defense Counsel, alternatively, cares naught for the disbursement of fees to Class Counsel as payment

21  of those fees will be deducted from the sum total that their client is already paying.  It matters little to

22  Defense Counsel whether Class Counsel takes 2% of the fund or 50% as the result is the same for their

23  client in either scenario.  Thus, the Court necessarily becomes the fiduciary for the fund's beneficiaries

24  and must carefully monitor disbursement to the attorneys by scrutinizing fee applications.  *Skelton v.*

25  *General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107

26  L. Ed. 2d 22 (1989.)

27  / / /

28

OBJECTION OF JOSEPH BALLA TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR - 2
09-CV-01733-JW

## II.     THE FACTS INDICATE THIS CASE WAS NEITHER EXTRAORDINARILY DIFFICULT NOR LENGTHY.

Plaintiffs filed their Complaint on April 21, 2009, and their First Amended Complaint (the operative Complaint) on June 16, 2009 (Doc. 19.)  Defendants Motion to Dismiss was filed on July 6, 2009 (Doc. 23.)  The Motion to Dismiss was largely denied, with the exception of the dismissal of the fraud and declaratory judgment claims. (Doc. 47.) Counsel then engaged in discovery, encountering the usual sorts of discovery issues, culminating in Motions to Compel in May of 2010. (Doc. 76, 147.) Thereafter, Class Certification was granted in July 17, 2010 (Doc. 185.) As a result, Defendants agreed to go to Mediation and the parties reached an agreement in substance in November 2010.

The entirety of this litigation lasted only 19 months from original filing to settlement agreement. Although certainly both Class and Defense Counsel have put forth dedicated efforts throughout this litigation, it could hardly be painted as particularly arduous or difficult.

## III. THE NINTH CIRCUIT PERMITS CALCULATION OF ATTORNEYS' FEES AWARDS UTILIZING EITHER THE PERCENTAGE OF THE FUND OR LODESTAR METHOD.

The District Court has discretion to use either the lodestar method or the percentage of the fund method for calculating attorney fees in common fund cases.  *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, (9th Cir. 1994.)  Calculation of the lodestar represents a check on the reasonableness of the fee calculation in a percentage of the fund case.  *Vizcainzo v. Microsoft Corp.,* 290 F. 3d 1043 (9th. Cir. 2002.)  However, the reasonableness of Plaintiffs' Counsel's fee request is in serious doubt given a review of this lawsuit.  Therefore, consideration should be given to utilization of the lodestar method for calculating fees to which Class Counsel is entitled. Under the lodestar/multiplier method, the district court first calculates the lodestar by multiplying the reasonable hours expended by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986). The Court may then enhance or diminish the lodestar with a multiplier, if necessary, to arrive at a reasonable fee. *Blum v. Stenson*, 465 U.S. 886, 888  (1984). Under the percentage method, the Court simply awards Class Counsel a percentage of the fund so as to provide them with a reasonable fee. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989). Whichever method the District Court employs, the Ninth Circuit has opined that "we require only that

fee awards in common fund cases be reasonable under the circumstances." *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990). "Because a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither method should be applied in a formulaic or mechanical fashion." *In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1295 (9th Cir. 1994.)

In the instant case, the lodestar is calculated to be $1.16 million dollars for approximately 3,200 hours of attorney work. (Plaintiff's Motion for Award of Attorneys' Fees And Expenses and Class Representative Incentive Compensation Awards and Memorandum of Points and Authorities in Support Thereof, hereinafter, "Motion for Fees", p. 19, ln. 9-10.) This means that, in order to reach the 25 percent requested by Counsel in their fee application, the Court will have to award a 6.46 multiplier. This is a rather high multiplier, particularly given the facts here, which prove that this case was neither enduring nor particularly onerous.

If the Court chooses to utilize the lodestar approach to calculate the attorneys' fees, this Objector requests that the multiplier be reduced to zero or a number which more accurately reflects the specific facts of this case.

## IV. IF THE COURT USES THE PERCENTAGE OF THE FUND METHOD, 25 PERCENT IS AN EXCESSIVE IN THIS INSTANCE.

A percentage award "should be adjusted, or replaced ... when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990); *Citing Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)). Either the lodestar or percentage method may "have its place in determining what would be reasonable compensation for creating a common fund[.]" Id. With regard to payment of Class Counsel, the Private Securities Litigation Reform Act's stated goal is to ensure that Counsel is compensated for its time and effort, rewarded for the result achieved, and that the compensation provides adequate incentive for other competent class counsel to pursue similar cases in the future. *In re Microstrategy, Inc.*, 172 F. Supp. 2D 778, 787-88 (E.D. Va. 2001). In order to ensure that Class Counsel is rewarded for its efforts, the Ninth Circuit has adopted a benchmark fee of 25 percent of the award in common fund cases. However, that is not the end of the

analysis in this Circuit.  The fee must be adjusted up or down to reflect the specific circumstances of each individual case.  *In re Ventro Corporation Securities Litigation*, 226 F. App'x 711, 711 (9th Cir. 2007.)

In establishing an appropriate percentage, Courts are directed to look at a number of factors that generally fall into five categories: (1) Results obtained; (2) the risk undertaken by Lead Counsel in litigating this issue; (3) the size of the fund created and the number of persons benefitted; (4) whether the percentage of the fund requested is a reasonable market rate; and (5) how long the litigation lasted such that Class Counsel has had to forego other, similar, lawsuits." *Viscainzo v. Microsoft Corp.*, 290, F. 3d 1043 (9th Cir. 2002.)  *See also* ALBA CONTE, ATTORNEY FEE AWARDS §§ 2.09, 2.33 and 2.34 (2d ed.1993 and Nov. 2001 Supp.) (surveying common fund settlements of $25-200 million and finding a range of 1-30%, with most awards around 5-20%). Id., at 1050.

However, the Court must bear in mind when determining an appropriate percentage  that  "the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.... Although upward adjustments of the lodestar figure are still permissible ... such modifications are proper only in certain "rare" and "exceptional" cases…."  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 106 S.Ct. 3088, 3098 (1986.)

**A.   The Result Achieved on Behalf of the Class is Small Compared to Class Counsel's Estimate of its Losses.**

In a Court's determination of fees, Court's almost uniformly scrutinize the reward. "One fundamental focus is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members. The Private Securities Litigation Reform Act of 1995 explicitly makes this factor a cap for a fee award in actions to which it applies. See 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6) (fee award should not exceed a "reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). For a percentage approach to fee measurement, results achieved is the basic starting point."  2003 Committee Note, Rule 23(h).

1        The Notice of Pendency and Proposed Settlement of Class Action (hereinafter, the "Notice")

2   states in Section C that the recovery to Settlement Class members will be proportional to the total

3   amount of Final Value Fees each Class Member paid between April 21, 2005 and August 26, 2009 (the

4   relevant time period) for selling parts and accessories on EBay.  According to Defendant's calculations,

5   the estimated recovery that Class Members will be refunded is "approximately 6.67% of the Final Value

6   Fees they paid for these listings."  (Notice, Section C.)

7        Lead Plaintiffs Alamo Motorsports, via individual Brice Yingling, and Andy Scott have been

8   using the EBay Motors webpage regularly since 2001 and 2002 respectively.  (First Amended

9   Complaint, P. 1-2.)  These parties have incurred an extraordinary amount of additional, improperly

10   billed fees as alleged in the First Amended Complaint.  Class Counsel estimates that the entire Class has

11   been overcharged by EBay Motors by approximately $100 million dollars. (Motion, P. 13, ln. 17.)

12   Thus, a 6.67% repayment to each Class Member is, admittedly, de minims.

13   **B. The Risk of No Recovery Was not Appreciable.**

14        In determining whether a settlement agreement is fair, adequate, and reasonable, a district court

15   may consider a number of factors, one of which is the strength of the Plaintiff's case. *Vazquez v. Coast*

16   *Valley Roofing,* Inc., 266 F.R.D. 482, 488 (9th Cir.  2010); *Citing Linney v. Cellular Alaska Pshp*., 151

17   F.3d 1234,1242 (9th Cir.1998). "[T]he court may balance and weigh different factors depending on the

18   circumstances of each case." *Vazquez* 266 F.R.D. At 488; *Citing Torrisi v. Tucson Elec. Power Co.*, 8

19   F.3d 1370, 1376 (9th Cir.1993).

20        This lawsuit was not significantly risky for Plaintiffs. This case did not present unusual or

21   difficult questions of law or fact for Class Counsel.  Although there were discovery disputes, these

22   issues were no so insurmountable and not so novel that they created an impediment to the Class's

23   recovery or threatened the life of the bulk of the Class's claims.  Rather, Plaintiffs' case was fairly

24   straightforward.  They only sought to prove that EBay charged the incorrect fee to the users of its EBay

25   Motors auction page without disclosing that it was going to charge this alternate fee. Furthermore, prior

26   to filing the Original Complaint in this action, EBay acknowledged that its webpages were "potentially

27   misleading" in response to Lead Plaintiff Alamo's customer service complaint.  (Motion, p. 14, ln. 8-9.)

28   Thus, this case was a straightforward one with a very normal amount of risk for Class Counsel.

1

**C.      The Size of the Fund.**

2

        Although the size of the fund is $30 million, the class size, too, is large at an estimated 2.5

3

million EBay users (Settlement Agmt, p. 8, ln. 13.)  Furthermore, the size of the recovery is small

4

compared to Class Counsels' estimate of "final damages of more than $100 million." (Motion, p. 14, ln.

5

17.)  Thus, the size of the fund, while it will certainly reimburse some Class Members for some of their

6

losses, will only reimburse them a very small sum in comparison to their out of pocket losses.

7

**D.      The Percentage Of The Fund Requested Is Not A Reasonable Market Rate.**

8

        25 percent of the fund, or 7.5 million dollars, is excessive given an assessment of the amount of

9

billable hours that were expended in bringing this lawsuit.  Class Counsel states that it spent 3,200 hours

10

in advancement of Plaintiffs' claims in this action.  (Motion, p. 19, ln. 9-10.)  (It is worth noting that six

11

months of time and 5 percent of the total billed hours (181.55 hours) were spent in advance of even

12

filing the Original Complaint on June 21, 2009. See Settlement Agmt, Dec. Verges, Ex. B.)

13

         This litigation was not so lengthy to justify an award of 7.5 million dollars plus expenses.  This

14

fee request amounts to a windfall of $2,343.75 per hour for every individual that worked on this case.

15

(This calculation was obtained by dividing $7,500,000 by 3,200 hours - the stated number of hours

16

expended in bringing this litigation by Class Counsel.)  Truly, this hourly rate seems excessive;

17

particularly in the case of some of the professional that are billed at a lower rate such as Paralegals,

18

summer associates, and associates.

19

**E.      The Litigation Was Not Lengthy.**

20

        This litigation lasted only approximately 19 months.  The original Complaint was filed on April

21

21, 2009 and on December 20, 2010 this Court preliminarily approved the Settlement Agreement.  Many

22

class actions last multiple years and consume incredible amounts of firm resources, costing them both

23

money and lost opportunity to undertake additional, profitable cases.  In those cases, the length of the

24

litigation is certainly permitted to be taken into consideration when determining the fee award.

25

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a

26

check on the reasonableness of the percentage award. Where such investment is minimal, as in the case

27

of an early settlement, the lodestar calculation may convince a court that a lower percentage is

28

reasonable." *Vizcainzo*, 290 F. 3d 1050. *See Also Six (6) Mexican Workers v. Arizona Citrus Growers*,

OBJECTION OF JOSEPH BALLA TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR - 7
09-CV-01733-JW

904 F.2d 1043, 1311, (9th Cir. 1990.) (litigation lasted more than thirteen years); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1377 (9th Cir. 1993)(considering counsel's bearing the financial burden of the case); *Bebchickv. Washington Metropolitan Area Transit Com'n,* 805 F.2d 396, 407 (9th Cir. 1986.)(Also considered the serious financial burden undertaken by firm).  In this instance, this lawsuit lasted less than two years.  The opportunity cost born by this firm and the consumption of firm resources was therefore minimal.

**F.     A 6.46 Multiplier is Excessive.**

Given the foregoing survey of the facts of this case, a multiplier of 6.46 is certainly excessive.  The Ninth Circuit opined in *Vizcainzo* (a case of uncommon length and difficulty) that, "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Vizcainzo* at 1051 n.6 (quoting [4] Newberg on Class Actions, § 14.[6] [4th ed.]).

In determining an appropriate percentage of the fund to award to Class Counsel, higher multipliers are usually awarded where the difficulty and risk were substantial, the case was protracted and thus severely taxing on the firm and, and the recovery for the Class was outstanding.  Those elements which could make this case a remarkable one are not present here.  This Objector does not imply that a multiplier may not be warranted should the Court deem it so, however, a multiplier of 6.46 is uncommonly high.

## V.     OBJECTORS' ADDED VALUE TO THE CLASS.

In their zeal to win approval of an agreement, professional class counsel and professional defense counsel often overlook or deny the importance of objectors to the class-action process.  Indeed, professional class counsel and professional defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet.  However, settlements, such as this one, can be so complicated that only lawyers who have participated in many class action lawsuits can provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement, and thereby assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral. Thus, objectors provide great value to the class action process.  Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser.  The judicial system would have failed Class Members by requiring no mechanism

for assuring that the agreed relief is ever received by the persons who should benefit.  The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed.  These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement."It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . .  It is impossible for a class to select, retain or monitor its lawyers as an individual client would."  *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002).  "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement."  Id.  "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative."  Id."Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally."  *Great Neck*, 212 F.R.D. at 412.  "From conflicting points of view come clearer thinking."  *Id.* at 412-13.  "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service."  *Id.* at 413.

Judge Posner characterized Objectors as "volunteer lawyers for the class."  He also approved the concept of awarding a fee to the objecting counsel because "[i]t is desirable to have as broad a range of participants in the fairness  hearing as possible because of the risk of collusion over attorneys' fees  and the terms of the settlement generally."  Id. In other cases, objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement.  See, e.g., *Bowling v. Pfizer, Inc.,* 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 257, 359-60 (N.D.Ga. 1993).  Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement.  *See County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325-27 (2d Cir. 1990); *Howes v. Atkins*, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); *Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 767 (S.D.N.Y. 1977); *see also Domestic Air*, 148 F.R.D. at 359.

A. **Request for Attorneys' Fees.**

Based on the foregoing, this Objector wish to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.  Just as Objector's counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate.  Accordingly, an incentive award is appropriate for Objectors herein for its willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## VI.   ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS.

This Objector join in and adopt all well-taken, good-faith objections filed by other Class Members in this case and incorporates them by reference as if they appeared in full herein.

## VII.   CONCLUSION

WHEREFORE, This Objector respectfully requests that this Court:

A.      Upon proper hearing, sustain these Objections;

B.      Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C.      Order such other relief as may be fair and  reasonable to the class.


Dated:  February 14, 2011                    By:  _____/s/ Darrell Palmer_____
                                                        DARRELL PALMER
                                                        Attorney for Objector, Joseph Balla

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2011, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California by using the USDC CM/ECF system.

Service on participants in the case who are registered CM/ECF users will be accomplished by the USDC CM/ECF system, to wit:

Keith Verges                           Michael G. Rhodes
Parker D. Young                        Benjamin F. Chapman
Raymond E. Walker                      Cooley Godward Kronish LLP
Figari & Davenport, LLP                rhodesmg@cooley.com
Kverges@figdav.com                     bchapman@cooley.com
Parker.young@figdav.com
Ray.walker@figdav.com                  Whitty Somvichian
                                       Cooley Godward Kronish LLP
**Plaintiffs' Counsel**                wsomvichian@cooley.com

                                       **Defense Counsel**


            ____/s/ Darrell Palmer_____
            Darrell Palmer
            Attorney for Plaintiff

OBJECTION OF JOSEPH BALLA TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR - 11
09-CV-01733-JW