Keith R. Verges
Parker D. Young
Raymond E. Walker
FIGARI & DAVENPORT, L.L.P.
901 Main Street, Suite 3400
Dallas, Texas 75202
TEL: (214) 939-2000
FAX: (214) 939-2090
*Admitted Pro Hac Vice*

Shawn T. Leuthold
LAW OFFICE OF SHAWN T. LEUTHOLD
1671 The Alameda #303
San Jose, California 95126
Telephone: (408) 924-0132
Facsimile: (408) 924-0134

Attorneys for Plaintiffs Brice Yingling
d/b/a Alamo Autosports and Andy Scott

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRICE YINGLING D/B/A ALAMO AUTOSPORTS AND ANDY SCOTT,<br><br>   Plaintiffs,<br><br><br><br><br><br>EBAY INC.,<br><br>   Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. C 09-01733-JW (PVT)

**NOTICE OF MOTION AND MOTION FOR ORDER FINALLY APPROVING CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES**

Date:  March 28, 2011
Time:  9:00 a.m.
Judge:  Honorable James Ware

# **TABLE OF CONTENTS**

I. Statement of Issues to Be Decided ...................................................................2

II. Background .........................................................................................................2

    A. Class Member Data ...............................................................................2

    B. Notice, Telephone Help Desk and Settlement Website ........................3

        1. CAFA Notice ...............................................................................3

        2. Class Member Notice ..................................................................3

        3. Telephone Help Desk. .................................................................4

        4. Settlement Web Site ....................................................................4

    C. Exclusion Requests ...............................................................................5

    D. Objections ..............................................................................................5

III. The Factors Considered in Agreeing to Settle ...................................................6

IV. Argument ............................................................................................................6

    A. The Notice Was Proper .........................................................................6

    B. The Court Should Approve the Settlement ...........................................7

        1. Standard for Approval of Settlement ..........................................8

        2. The Settlement Fund is Fair, Reasonable and Adequate............9

            (a) Strength of Plaintiffs' Case ..........................................9

            (b) Risk, Expense, Complexity & Likely Duration of Litigation ..................11

            (c) Risk of Maintaining Class Action Status.................................12

            (d) Amount Offcered in Settlement .................................13

            (e) Extent of Discovery Completed & State of Proceedings .........................13

            (f) Experience and Views of Counsel ............................14

            (g) Presence of A governmental Participant ..................14

            (h) Reaction of Class Members .......................................14

    C. The Court Should Approve the Plan of Distribution ..........................15

D.      The Cy Pres Recipients .................................................................................. 16

        1.  Law Schools ...................................................................................... 17

        2.  The NCLC and FTC .......................................................................... 18

        3.  Archive.org ...................................................................................... 18

V.      Conclusion .......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                     **PAGE(S)**

*Browning v. Yahoo! Inc.*,
   No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266
     (N.D. Cal. Nov. 16, 2007) ................................................................. 7

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................... 15

*Colesberry v. Ruiz Food Products, Inc.*,
   No. CV F 04-5516, 2006 U.S. Dist. LEXIS 45024
     (E.D. Cal. July 3, 2006) .................................................................... 7

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ........................................................... 8

*Dunleavy v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) ............................................................. 15

*Franks v. Kroger Co.*,
   649 F.2d 1216, (6th Cir.1981) ........................................................... 7

*Hanlon v. Chrysler Corp.*,
   150 F. 3d. 1011 (9th Cir. 1998) ......................................................... 8-9

*In re NVIDIA Corp.*,
   No. C-06-06110, U.S. Dist. LEXIS 11735
     (N.D. Cal. Dec. 22, 2008) ................................................................. 8

*Lundell v. Dell, Inc.*,
   No. C05-3970 JW (RS), 2006 U.S. Dist. LEXIS 90990
     (N.D. Cal. Dec. 5, 2006) ................................................................... 7

*Officers for Justice v. Civil Service Comm'n*,
   688 F.2d 615, 624 (9th Cir. 1982) ...................................................... 8

*Torrisis v. Tuscon Elec. Power Co.*,
   8 F.3d 1370 (9th Cir 1993) ................................................................ 8

**STATUTES**

28 U.S.C. § 1715 ..................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e)(1) ............................................................................ 7

Fed. R. Civ. P. 23(e) ............................................................................ 2, 6-8

Fed. R. Civ. P. 23(h) ................................................................................ 2

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

Please take notice that on March 28, 2011, at 9:00 a.m., or on such other date as the Court directs, in Courtroom 8, 4th Floor of the United States District Court, Northern District of California, San Jose Division, before the Honorable James Ware, Plaintiffs Brice Yingling d/b/a Alamo Autosports ("Alamo") and Andy Scott ("Scott") (collectively "Plaintiffs" or "Class Representatives"), on behalf of themselves and all those similarly situated, will jointly move this Court for an order finally approving the settlement that was preliminarily approved on December 21, 2010 (Doc 210), and for entry of an appropriate judgment as contemplated by the Settlement Agreement. In addition, Class Counsel, Figari & Davenport, LLP, will seek an order awarding it attorneys' fees, costs, and incentive awards to the Class Representatives as permitted by the parties' Settlement Agreement and pursuant to the Motion for Award of Attorneys' Fees and Incentive Compensation filed February 4, 2011 (Doc. 211).

Plaintiffs make this Motion for Approval pursuant to Federal Rule of Civil Procedure 23(e) as set forth in the accompanying brief. eBay does not oppose the Motion for Final Approval or the Motion for Award of Attorneys' Fees and Incentive Compensation, although eBay may want to be heard on the selection of cy pres recipients. This Motion is based on this Notice; the following Memorandum of Points and Authorities in Support of the Motion; the Declaration of Keith Verges ("Verges Declaration") filed herewith as Exhibit 1; the Declaration of Michelle M. La Count ("La Count Declaration") filed herewith as Exhibit 2; the Motion for Class Certification (Doc. 180) first filed April 12, 2010; the Motion for Preliminary Approval filed December 10, 2010 (Doc. 205); the Motion for Award of Attorneys' Fees and Incentive Compensation filed February 4, 2011 (Doc. 211); the Court's remaining file in this action; and such other argument or evidence as may be presented at or prior to the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Federal Rule of Civil Procedure 23(e) and (h), Plaintiffs and Class Counsel seek an order from the Court:  (i) approving the Settlement and the allocation of payments thereunder; (ii) approving the award of attorneys' fees to Class Counsel, reimbursement of Class Counsel's costs, and award of incentive compensation to Class Representatives; and (iii) entering a final judgment in substantially the form contemplated by the Settlement Agreement.  The judgment will provide for the disbursement of the $30 million Settlement Fund previously established by eBay and will conclude this case.  Finally, the La Count Declaration fulfills the requirements of Paragraphs 2 and 4 of the Order Preliminarily Approving Settlement (Doc. 210).

## II.  BACKGROUND

Plaintiffs incorporate by reference the description of their claims, Bay's defenses, the procedural history of the case and the terms of the parties' settlement agreement set forth in the Motion for Preliminary Approval (Doc. 205).  The following describes the settlement notice and administration process to date, together with the method and amount of proposed disbursement of the Settlement Fund.

### A.  Class Member Data.

During December 2010, eBay gathered the data necessary to identify Class members and the amount of relevant fees paid by each Settlement Class Member to eBay during the Class Period. On December 30, 2010, eBay's Counsel provided the list of Settlement Class Members to the Settlement Administrator via secure file transfer. La Count Decl. ¶ 7.  The files contained 2,535,974 records, two were exact duplicates of other records, bringing the total valid records total to 2,535,972; 11,503 of these records contained only overwritten, unusable email and mailing address data due to the Settlement Class Member previously requesting deletion of his/her/its data from the eBay servers as required by law in certain countries.  *Id.* at ¶ 8. Class Counsel and Defense Counsel

agreed to a process by which A.B. Data would review historical eBay invoices containing final value fees sent to these Settlement Class Members during the Class Period in an attempt to garner name and address information for the 11,503 Settlement Class Members with overwritten contact data. *Id.* at ¶ 9. This process is referred to as "data mining" and was used to establish mailing addresses wherever possible as the email addresses were not contained in the invoices used for this project. *Id.* The data mining project produced results for all but 1,108 records for which even the prior invoices that eBay produced did not contain a usable address. *Id.* at ¶ 10. The 10,395 parties whose address information could be data mined were added to the Postcard Notice mailing list described below. *Id.*

**B.    Notice, Telephone Help Desk and Settlement Website.**

**1.    CAFA Notice.**

On or about December 20, 2010, the Settlement Administrator mailed notice to each State's Attorney General in compliance with the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), and specified in 28 U.S.C. § 1715. La Count Decl. ¶¶ 5-6.

**2.    Class Member Notice.**

Between January 12, 2011 and January 14, 2011, a total of 2,524,469 emails were sent to Settlement Class Members. La Count Decl. ¶ 11. The emails were sent at a rate of no more than 50,000 per hour to improve deliverability and maintain stability of the case website when inquiries were being made by Settlement Class Members. *Id.* A total of 311,273 emails immediately bounced back to the Settlement Administrator. La Count Decl. ¶ 12. An additional 89 emails had delayed responses and were later deemed bounced and added to the Postcard Notice mailing list, bringing the total to be mailed to 311,362 from bounced emails. *Id.* Per the directive of Class Counsel and in accordance with United States Postal Service ("USPS") regulations to receive the best possible postage rate, the Settlement Administrator standardized and updated all addresses for bounced and data mined Settlement Class Members to receive a Postcard Notice using NCOA[Link], a national

database of address changes that is compiled by the USPS. La Count Decl. ¶ 13.   On or about January 27, 2011, the Settlement Administrator mailed a total of 321,757 Postcard Notices (311,362 from bounced Email Notices and 10,395 from the data mining project) via First-Class Mail, postage prepaid. La Count Decl. ¶ 15.

### 3.    **Telephone Help Desk.**

On or about January 11, 2011, a case-specific toll-free number, 888-206-2123, was established with an Interactive Voice Response system and live operators. La Count Decl. ¶ 16.  The automated attendant answered the calls and presented callers with a series of choices to respond to basic questions. *Id.* If callers needed further help, they had the option to be transferred to a live operator during business hours. *Id.* From January 11, 2011, through February 17, 2011, the Settlement Administrator handled 548 telephone calls and received a total of 25 voice mail messages, all of which were returned within one business day. La Count Decl. ¶ 17.

### 4.    **Settlement Web Site.**

On or about January 11, 2011, a case-specific website, www.ebaymotorsfeeclassaction.com, became active. La Count Decl. ¶ 18.  The website contains general information regarding the Action and Settlement, as well as an interactive address update feature and instructions on alternative ways to contact the Settlement Class Administrator to update any incorrect name or address associated with the Settlement Class Member's eBay account. *Id.*

The settlement website also includes copies of the following documents that are available for download:

    a.   Email Notice Sample;

    b.   Postcard Notice;

    c.   Plaintiff's First Amended Class Action Complaint;

    d.   eBay's Answer to First Amended Class Action Complaint;

    e.   Order Granting in Part and Denying in Part Defendant's Motion to Dismiss;

f.   Order Modifying Class End Period and Requesting Submission of Class Notice;

g.   Order Granting Plaintiff's Motion for Class Certification;

h.   Order Preliminarily Approving Class Settlement;

i.   Stipulation and Agreement of Settlement; and

j.   Motion for Award of Attorneys' Fees and Incentive Compensation.

La Count Decl. ¶¶ 18-19.  The same documents are available for download from A.B. Data's website, abdataclassaction.com, on the case page for this Action.  *Id.*  As of February 17, 2011, the website has been visited by 325,822 unique IP addresses. La Count Decl. ¶ 20.

### C.   Exclusion Requests.

As of February 16, 2011, A.B. Data had received requests for exclusion from 40 Settlement Class Members.[1] La Count Decl. ¶ 22.  The estimated settlement payments that would have otherwise gone to the 40 excluded Class Members total approximately $466.57.  *Id.*  Exclusion requests were required to be postmarked no later than February 14, 2011.  The list of exclusions as of February 16, 2011, is attached hereto as Exhibit 3.

### D.   Objections.

As of February 18, 2011, there have been two objections to the settlement.  One was filed with the Court (Doc. 212) and the other was mailed to the Administrator and is attached as Exhibit 4.  Both objections primarily focus on the amount of the proposed attorneys' fees to be awarded to Class Counsel.  One objector provided no argument or authorities in support of his objection and stated that he did not intend to appear at the March 28, 2011, hearing. (Ex. 4).  The other objector stated an intent to appear at the final hearing through counsel and filed a memorandum (Doc. 212).  Class Counsel will file a separate response to the objections on or before March 7, 2011, in accordance with the deadline established in the Order Preliminarily

---

[1] All requests for exclusion must be postmarked by February 14, 2011.  Due to the vagaries of the postal system, it is possible that additional opt-outs may be received after the filing of this motion.

Approving Proposed Settlement (Doc. 210).

## III.    THE  FACTORS CONSIDERED IN AGREEING TO SETTLE

In determining to settle the Action, Class Representatives and Class Counsel have taken into account the substantial expense and length of time necessary to prosecute the litigation through complete pretrial discovery, trial, post-trial motions and likely appeals, taking into consideration the significant uncertainties in predicting the outcome of this complex litigation. During the course of the litigation, eBay, in addition to denying all liability, opposed certification of the Class, disputed the Class was damaged by any wrongful conduct on its part, contended various Class members were undercharged fees passed on Plaintiffs' theories, and disputed the amount and calculation of any alleged overcharges.   Class Representatives recognize the uncertainty and risk of the outcome of any litigation, especially complex litigation such as this, and the difficulties and risks inherent in the trial of such an action.

Class Counsel has engaged in a thorough investigation and analysis of the legal and factual issues involved in the claims against eBay.   This settlement was achieved only after Class Representatives had the benefit of development of the facts, evidence, and legal issues relating to their claims.   The settlement provides immediate and substantial benefits to the Class and avoids the risk that liability or damages might not be proven at trial, as well as the added time and expense of continuing litigation.   Moreover, the gross settlement amount represents approximately 25% - 40% of the damages that Class Counsel believes would have been the likely amount sought at trial.   Class Representatives approved the terms of the Settlement Agreement, and Class Counsel believes the settlement to be fair, reasonable, adequate, and in the best interests of the members of the Class.

## IV.    ARGUMENT

### A.    The Notice Was Proper.

Federal Rule of Civil Procedure 23(e) provides that "[t]he court must direct notice in a

reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1). "Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Products, Inc.*, No. CV F 04-5516, 2006 U.S. Dist. LEXIS 45024, at *20 (*citing Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir.1981)) (E.D. Cal. July 3, 2006). Email was used here since the Class forged their relationship with eBay via electronic communication and email is the standard and preferred form of communication between eBay and its customers. *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 U.S. Dist. LEXIS 86266, at *13-14 (N.D. Cal. Nov. 16, 2007) ("Email notice was particularly suitable in this case, where settlement class members' claims arise from their visits to Defendants' Internet websites."); *accord Lundell v. Dell, Inc.*, No. C05-3970 JW (RS), 2006 U.S. Dist. LEXIS 90990, at *2-3 (N.D. Cal. Dec. 5, 2006) (Ware, J.). The Court preliminarily approved the form of notice and the Notice statistics confirm its effectiveness.

Notice was sent via email to 2,524,469 individuals; only 311,362 (12.3%) "bounced." Postcard notice was mailed to 321,757 persons (311,362 from bounced Email Notices and 10,395 for whom email addresses were unavailable). In addition, the notice and more detailed information about the case has been available on www.ebaymotorsfeeclassaction.com and http://www.abdataclassaction.com/Cases.aspx since January 12, 2011. The user forums sponsored by eBay on its web site have also had multiple discussion threads – several of which eBay and the Settlement Administrator have posted messages in – confirming the knowledge of the pendency and settlement of this matter among eBay sellers. Finally, multiple internet news sources have publicized information about the case and settlement, as evidenced by a simple Google search. Neither of the objectors contends that the notice afforded to the Class is inadequate. Class Counsel respectfully submits that the form and method of notice was proper and should be finally approved.

### B. The Court Should Approve the Settlement.

Class Representatives and eBay request that this Court approve the Settlement Agreement

and enter a final judgment in accordance therewith. Class Counsel and Class Representatives believe the Settlement Agreement achieves an excellent result for the Class. Moreover, no one has objected to the substance of the settlement insofar as the relief to Class Members or the distribution plan is concerned. Class Counsel respectfully submits that the settlement is fair, reasonable, and adequate and warrants final approval by this Court.

### 1.    Standard for Approval of the Settlement.

Federal Rule of Civil Procedure 23(e) requires that the terms of a class settlement be fair, reasonable and adequate for the Class. *Hanlon v. Chrysler Corp.,* 150 F. 3d. 1011, 1026 (9th Cir. 1998). The Ninth Circuit explained:

> Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.; accord Torrisis v. Tuscon Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir 1993).

An evaluation of the costs and benefits of settlement must be tempered by recognition that any compromise involves concessions on the part of all of the settling parties. *In re NVIDIA Corp.*, No. C-06-06110, U.S. Dist. LEXIS 11735 at *11 (N.D. Cal. Dec. 22, 2008). Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of higher hopes." *Id.* (quoting *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982)) (internal quotation marks omitted). Consequently, "[t]he trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977) (internal quotations omitted). The settlement easily satisfies these criteria and should be finally approved.

## 2. The Settlement Fund Is Fair, Reasonable and Adequate.

Plaintiffs incorporate by reference their detailed submission regarding the fairness and size of the settlement submitted in their Motion for Preliminary Approval, which already addresses many of these factors (Doc. 205). In addition, the settlement meets each of the factors recited by the Ninth Circuit in *Hanlon* above for the following reasons.

### (a) Strength of Plaintiffs' Case

The Settlement Fund is approximately 25% of the maximum amount of potential overcharges to the Class during the Class Period.[2] Verges Decl. ¶ 3. And, perhaps even more importantly, the Settlement Fund represents as much as 40% of the overcharge damages that Class Counsel believes might ultimately have been sought from the jury at the time of trial. *Id.* By any standard, this is a substantial recovery of the damages suffered by the Class regardless of the strength of the Class claims. But it is a particularly impressive result under the circumstances of this case.

Although Plaintiffs have asserted various legal causes of action against eBay, including breach of contract and UCL claims, the strengths and weaknesses of the Plaintiffs' case are more easily evaluated by examining the three damage theories advanced by Plaintiffs.[3] Based upon the data and information obtained from eBay in discovery, Class Counsel estimates the Class's maximum recoverable damages to be as follows:

---

[2] One of the objectors, Joseph Balla, attempts to derogate the settlement by mistakenly comparing the final payments to Class Members with the *total* Final Value Fees paid during the Class Period. Balla Objection (Doc. 212) at 6 (characterizing the recovery as "admittedly, deminims (sic)"). The proper comparison should be between the settlement amount and the potential *damages* that might be recovered at trial. Damages do not equal *total* Final Value Fees; Plaintiffs instead contend that they were *overcharged a portion* of Final Value Fees. As discussed hereinafter, the Class was entitled to seek overcharges of at most approximately $120 million; the amount sought at trial might have been more in the neighborhood of $75 million. The Settlement Fund is therefore 25% - 40% of the Class's maximum damages – an amount that even Mr. Balla would have to concede is anything but deminimus.

[3] Each of the three damages theories advanced by Plaintiffs is more fully described in the Motion for Class Certification (Doc. 180 at 2-4, 13-15), which is incorporated herein by reference.

| Damages Theory | Maximum Damages |
|---|---|
| Stacking Damages | $4,205,466 |
| Same as Insertion Fee Damages | $92,192,050 |
| First Successful Bid Damages | $24,342,529 |
| TOTAL | $120,740,045 |

Verges Decl. ¶ 4.

In the opinion of Class Counsel, the Stacking claim theoretically presents the strongest overall claim.  Verges Decl. ¶ 5.  But, of course, that claim only accounts for $4.2 million in damages.  Furthermore, the Stacking claim suffers from factual and legal issues that might impact or diminish its likelihood of success, including eBay's argument that Plaintiffs' position results in (1) some Class Members having been *undercharged* by eBay in particular transactions; and (2) a logical paradox where certain higher priced sales would result in lower absolute fees than the fees charged for the sale of a lower priced item.  *Id.*

The other two damages theories (the largest and most viable being "Same as Insertion Fee" damages) were developed as part of Class Counsel's investigation and prosecution of this case based upon older, versions of the eBay Motors Fee Page that were inaccessible on any eBay web site.  Verges Decl. ¶ 6.  No Class Representative noticed the "Same as Insertion Fee" problem back when the eBay Motors Fee Page actually contained that language.  *Id.*  Likewise, no Class Representative ever complained to eBay that Successful Listing or Transaction Services fees for Parts and Accessories should be calculated from the first successful bid (rather than the final and often higher bid price).  *Id.*  This lack of any contemporaneous complaint, coupled with eBay's various defenses, created a substantial risk that the Court or a jury might decide that Class Members either should not recover anything for this claim or, alternatively, that the Class's damages should be calculated in a manner resulting in a significantly smaller recovery.  *Id.*

Indeed, in order to eventually prevail on the merits, Plaintiffs would have to overcome a number of defensive arguments asserted by eBay, including evidence that eBay contends would show that (1) the disputed fees charged were otherwise disclosed by portions of the eBay web site or listing process, (2) the vast majority of Class Members consistently paid the fees at issue in response to invoices fully disclosing the amount of the Final Value Fees in dispute, (3) no objections were made by Class Members contesting the applicability of Final Value Fees to their sales, and (4) at least some Class Members (like the five Class Member sellers who submitted declarations in connection with eBay's opposition to class certification) paid Final Value Fees knowingly and voluntarily.  *Id.*

While the two additional theories developed by Class Counsel result in total maximum damages to the Class of approximately $120 million, Class Counsel believes it is possible that the "First Successful Bid" theory might have been abandoned if this case had proceeded to trial and the "Same as Insertion Fee" damage calculation might have been reduced by approximately 25%, thereby resulting in total damages sought at trial of approximately $75 million.  Verges Decl. ¶ 7. If that were the case, the Settlement Fund would represent a recovery of 40% of the Class damages despite the various factual and legal issues discussed above.  *Id.*  In the context of a negotiated compromise, therefore, Plaintiffs believe a $30 million settlement is certainly fair, reasonable and adequate given the relative strength of the Plaintiffs' case.  *Id.*

### (b) Risk, Expense, Complexity & Likely Duration of Litigation

There were always a number of risks associated with the Plaintiffs' claims, several of which have already been discussed above.  First, a large practical risk was eBay's history of defending against class actions and its ability to do so vigorously (and expensively).  Verges Decl. ¶ 8.  Until this Settlement, eBay had never paid any class of sellers anything; it instead had a long history of zealously defending any class claims and paying nothing to customers to settle class actions.  *Id.*  Thus, liability was uncertain, but a strenuous defense was guaranteed.

Arguably, one of the largest risks was due to the fact that eBay invoiced the fees at issue on a monthly basis and, for the most part, none of the Class Members ever complained about the fee structures but instead simply paid the bills. Verges Decl. ¶ 9. While this is attributable to the fact that consumers routinely pay bills without any real scrutiny, it may be more difficult to get the trier of fact to accept that explanation when there are 2.5 million consumers, none of whom appeared to have specifically complained that Final Value Fees should have been the same as insertion fees (the largest monetary component of the damage model). *Id.*

Furthermore, if this case were to continue, it would become vastly more expensive since detailed discovery would be required regarding, among other things, (1) the historical drafting of each relevant eBay web page; and (2) the structure and operation of eBay's enormous transactional databases. Verges Decl. ¶ 10. Substantial additional costs and effort would also have been expended analyzing the literally tens of millions of transactions conducted by Class Members during the Class Period. *Id.* The settlement obviates the latter expense, since eBay mined the data for class members and fees paid as part of the Settlement. Finally, the case would have lasted at least 2-3 more years, since discovery, pretrial motions and trial would have likely taken through much of 2011, and eBay most certainly would have appealed any adverse verdict. *Id.* In contrast, the Settlement provides certain, immediate payment of a substantial percentage of the Class' best conceivable day in court. *Id.*

### (c)    Risk of Maintaining Class Action Status

Decertification is always a meaningful risk. eBay vigorously opposed class certification, arguing that many individual questions, such as whether Class Members voluntarily paid their invoices, precluded certification. While Class Counsel remain confident that class treatment is the only fair way to address the claims, eBay has the resources and obvious intent to relentlessly attack certification through trial and on appeal. The settlement is fair and reasonable insofar as this risk is replaced with eBay's *agreement* to class treatment.

**(d)    Amount Offered In Settlement**

eBay never offered any class settlement prior to the November 2010 mediation. Verges Decl. ¶ 11. To the contrary, eBay suggested that the Class Representatives settle individually and abandon the Class. *Id.* This possibility probably would have been more lucrative to Class Representatives than the Settlement (even counting incentive awards), but Class Representatives persevered. *Id.* The settlement negotiations were difficult. *Id.* In fact, during the mediation, the parties had essentially reached an impasse. *Id.* The Mediator had to intercede with a mediator's offer in order to get the sum ultimately agreed upon. *Id.* Class Counsel and Class Representatives accepted this figure in their judgment and assessing all the risks of further litigation. *Id.*

There is no doubt that $30 million is a substantial recovery. The settlement amount is all cash, with no "soft money," coupons, or the like. There is no reversion to eBay. Simply put, without even having to engage in any claim process, each Class Member will automatically receive a pro rata cash refund of the fees they paid to eBay. Although the class is large, some of the more active sellers will receive checks for hundreds of thousands of dollars. The settlement amount easily meets the test of being fair, reasonable and adequate.

**(e)    Extent of Discovery Completed & Stage of Proceedings**

Discovery of most material facts, on a large scale basis, was complete and Plaintiffs had achieved Class Certification at the time of settlement. Verges Decl. ¶ 12. In particular, a substantial amount of discovery and effort was complete regarding the nature and extent of the Class's damages so that both sides could evaluate the potential exposure involved in the case. *Id.* While this was certainly enough to assess settlement, quite a bit more work was going to be necessary to prepare for trial. *Id.* Many more eBay witnesses would need to be deposed and Plaintiffs would have had to delve in much more detail into the vast intricacies of the many eBay databases, some of which are among the largest in the world. *Id.* This would have required a significant out of pocket expense for hardware and consultants, all of which would have come back

out of any subsequent recovery.  *Id.*  These expenses are avoided by the settlement, a fair and reasonable result.

### (f)      Experience and Views of Counsel

Class Counsel is very experienced in class action litigation.  Verges Decl. ¶ 13.  Class Counsel has defended or prosecuted over 45 class actions in the past 20 years and knows the risks both sides face.  *Id.*  This perspective allows Class Counsel to be an advocate in favor of, and objective evaluator of, the case.  *Id.*  The views in this Memorandum and in the Motion for Preliminary Approval are based on this body of experience and the particular law and facts of this case.  To summarize, Class Counsel have taken an initial client inquiry that presented maximum damages of $4.2 million and, with diligence, advocacy and creativity, gotten to the point where a $30 million settlement is possible.  *Id.*  All of this against a defendant that has always zealously defended itself in lawsuits and *never* before paid any class of customers any money.  Class counsel unequivocally believes this settlement is more than fair, reasonable and adequate.

### (g)      Presence of a Governmental Participant

There is no prospect of a governmental participant in this dispute.  Accordingly, this factor does not appear to impact the evaluation of the settlement.

### (h)      Reaction of Class Members

Class Counsel has received many kudos and expressions of approval from Class Members for finally getting eBay to refund some of their fees; the large transactional fees charged by eBay is perhaps the number one complaint voiced by eBay sellers.  Verges Decl. ¶ 14.  Of 2.5 million class members, only 40 have opted out; their collective share of the settlement would have been a mere $466.45.  *Id.*; La Count Decl. ¶ 22.  Only two Class Members have objected.  Notably, even the sellers who *supported* eBay at the class certification stage by signing declarations that they *knowingly and voluntarily* paid their Final Value Fees to eBay have not excluded themselves from the settlement. (see Doc. 133 (declarations attached to eBay's Counsel's declaration)).   These

statistics alone indicate a favorable reaction by Class Members and their overall satisfaction with the settlement.

Even the two objections filed in this case do not attack to the fundamental settlement terms or Settlement Fund amount.   The two objectors challenge only the award of attorneys' fees, although Mr. Graesler also voices generic complaints about what he perceives to be inherent flaws in the way all class actions are conducted.   (*See* Ex. 4.)   Neither objector offers a material disagreement with any substantive element of the settlement or Class Counsel's evaluation of the settlement.   Objectors offer no substantive theory or argument that damages should be higher. They do not disagree with Class Counsel's assessment of the case.   They articulate no basis for overcoming eBay's defenses.   Objectors never independently complained to eBay about any of the issues in this case; they were no doubt first made aware of their potential rights by virtue of the Notice they received from the Settlement Administrator.   Thus, the overall reaction of Class Members supports approval of the settlement.

### C.   The Court Should Approve the Plan of Distribution.

A plan of allocation, like the other terms of a settlement, must be fair, reasonable, and adequate. *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1285 (9th Cir. 1992).   In this case, the plan of allocation is pro-rata, *i.e.*, each person gets the same percentage refund of his or her total Final Value Fees paid during the Class Period.[4]   This method is not only fair (no one is favored), it is reasonable because it is the most simple and inexpensive way to allocate the recovery among Class Members.   *Dunleavy v. Nadler*, 213 F.3d 454, 460 (9th Cir. 2000) (allocation plan is within discretion of trial court).   The Settlement Fund is reasonable and adequate because it represents

---

[4] The only Class Members who will not be mailed a distribution check are those who (1) did not pay net Final Value Fees to eBay in an amount sufficient to entitle them to receive a payment of at least $.005, (2) those who were mailed a postcard notice that was returned by the USPS as undeliverable and who have not subsequently updated their address with the Settlement Administrator,  or (3) requested that their personal information be purged from eBay's records and who could not be otherwise identified from the data mining project conducted by the Settlement Administrator using old eBay invoices.

approximately 25% - 40% of the largest estimate of damages, a significant sum in light of the risks presented by trial on the merits and the delay and expense associated with getting to trial. The method is also automatic; no further claims submission or other effort by Class Members is required in order to get paid. No objector has asserted that the $30 million settlement fund is inadequate or that the proposed pro-rata allocation among Settlement Class Members is unfair or unreasonable.

Based upon the best estimates presently available to the Settlement Administrator, the proposed distribution is calculated as follows:

| | |
|---|---|
| Gross Settlement Fund: | $ 30,000,000.00 |
| Administrative expenses: | ($ 1,911,697.00) |
| Class Counsel's Expenses (not to exceed amount): | ($ 160,000.00)[5] |
| Attorneys' Fees Requested by Class Counsel: | ($ 7,500,000.00) |
| Net Settlement Fund: | $ 20,488,287.00 |
| Total Final Value Fees Paid During Class Period: | $304,000,000.00 |
| Refund Percentage of Each Class Member's FVF: | 6.7% |

La Count Decl. ¶ 25.

### D. The Cy Pres Recipients.

Because eBay's records contained name and address information for all but a few class members, it is expected that virtually all of the net Settlement Fund will be mailed to Class Members. Undoubtedly, however, there will be some portion of the Settlement Fund that cannot be distributed to Class Members for various reasons, such as Class Members who fail to timely cash their distribution checks or who have not provided eBay or the Settlement Administrator with a current mailing address. Class Counsel therefore proposes to disburse the balance remaining in the

---

[5] In the event of an appeal, Class Counsel requests that the Court authorize an additional expense reserve in the amount of $25,000.00 so that sufficient funds will be available to reimburse all expenses incurred during the pendency of the appeal.

net Settlement Fund after payment of all expenses and distributions to whichever of the following cy pres recipients meet with the Court's approval:[6]

<u>Legal Education Institutions</u>

    1.      Stanford Law School

    2.      Southern Methodist University School of Law

    3.      University of Texas School of Law

<u>Consumer Protection Organizations</u>

    4.      National Consumer Law Center

    5.      United States Federal Trade Commission – Division of Marketing Practices

<u>Internet Archive</u>

    6.      Archive.org

Each of the proposed cy pres recipients has a mission that relates to the issues and interests presented in this case and, as discussed below, would be a worthy recipient of undistributed settlement funds.

    **1.**    **<u>Law Schools</u>**

Throughout this case, it has been apparent that the law of internet commerce is still in need of development.  For example, it is unclear whether, how, and to what extent an entity like eBay can incorporate certain web pages into its User Agreement[7] and whether an e-commerce entity should be required to archive, in electronic form, all versions of its user agreement for access and reference by customers.  The three law schools selected each have strong national reputations, have a geographical connection to the case (*i.e.*, Stanford is near the forum and both of the Class

---

[6] Pursuant to Section 3.12 of the Settlement Agreement, the parties agreed that Class Counsel would propose one or more cy pres recipients, subject to eBay's right to object.  eBay has previously indicated that it may object to one or more of the proposed cy pres recipients.  The Court, of course, makes the final determination of whether Class Counsel's proposed cy pres recipients should be approved.

Representatives reside in Texas), and devote substantial efforts to scholarly teaching, research, and commentary on technology issues, including the development of internet commerce law. Stanford has a "Center for E-Commerce" dedicated to exploring electronic commerce law. *See* http://www.law.stanford.edu/program/centers/cfec/. SMU supports the SMU Science and Technology Law Review and the University of Texas publishes the Texas Intellectual Property Law Journal, both of which explore, among other things, emerging legal issues in technology-related areas. Of course, each school also does an excellent job educating the next generation of attorneys to defend the legal rights of parties like the Class Members in consumer and commercial disputes or establish lawful contracts and trade practices for e-commerce businesses like eBay.

### 2. The NCLC and FTC

The National Consumer Law Center ("NCLC") is a nonprofit organization focusing on low income consumer law issues. *See* http://www.nclc.org/. The United States Federal Trade Commission – Division of Marketing Practices ("FTC-DMP") deals with issues of consumer fraud in the marketplace. *See* http://www.ftc.gov/bcp/bcpmp.shtm. In addition to enforcement activities such as prosecuting civil actions against internet fraudsters, the FTC-DMP also sponsors and conducts symposia on legal issues arising from cutting-edge technologies from the internet.

### 3. Archive.org

Finally, Class Counsel relied extensively on Internet Archive (www.archive.org) to investigate the form and content of eBay's historical web pages. This information was critically important to the development of this case, especially before discovery, and provided one of the best ways for Class Counsel to learn about the eBay Motors Fees in effect during the early part of the Class Period. Notably, even eBay itself did not have readily-available archive versions of its web

---

[7] The parties never did reach resolution regarding issues such as (1) how many links past the User Agreement page comprised the "four corners" of the contract; and (2) how one determines which web page controls over another in the event of inconsistency or conflict.

pages; Internet Archive was a far more convenient source for this information. The Internet Archive is a 501(c)(3) non-profit that was founded to build an Internet library. Its purposes include offering permanent access for researchers, historians, scholars, people with disabilities, and the general public to historical collections that exist in digital format. Given the important contribution made to this case by Internet Archive's programs, it is a particularly appropriate recipient of a portion of the leftover settlement funds.

Plaintiffs respectfully request that each of the foregoing entities be given a pro-rata share of any available cy pres funds. Contributions to the organizations will be made with the directive that the funds be used, to the extent reasonably possible, to promote issues and initiatives relating to internet commerce and consumer protection. If the Court deems any of the proposed recipients to be unacceptable, Plaintiffs request that the Court substitute one or more alternative cy pres recipients that the Court, in its sole discretion, considers to be appropriate under the circumstances of this case.

## V.    CONCLUSION

For the foregoing reasons, Class Representatives respectfully request that this Court (1) approve the settlement and plan of distribution; (2) approve the form and method of notice; (3) award reasonable fees, costs and incentive awards to Class Counsel and Class Representatives; (4) enter a final judgment herein in substantially the form being submitted herewith; and (5) award them such other and further relief to which they may be entitled.

Dated:  February 21, 2011.

Respectfully submitted,

By: /s/ Keith R. Verges
       Keith R. Verges

Keith R. Verges
Parker D. Young
Raymond E. Walker
FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
Telephone: (214) 939-2017
Facsimile: (214) 939-2090
*ADMITTED PRO HAC VICE*

Shawn T. Leuthold
Law Office of Shawn T. Leuthold
1671 The Alameda #303
San Jose, California  95126
Telephone: (408) 924-0132
Facsimile: (408) 924-0134

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I hereby certify that all counsel of record who have properly registered with the court's electronic filing system will be served with a copy of this document via the Court's CM/ECF system pursuant to the local rules of this Court, on this 21st day of February 2011.

/s/ Keith R. Verges
Keith R. Verges